UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOVITA BRANUM, STEPHANIE MILLS,
LINDSEY POOLE, SHEILA RAINES,
AND BRENDA SONES                                                                    PLAINTIFFS

V.                                                          CIVIL ACTION NO. 3:10CV852 DPJ-FKB

DANA RICHARDSON, IKE ROOKMAKER,
WAYNE ELLIS, GUY HOGAN, SONYA TEASLEY,
GEORGE PHILLIPS, JAMES WASHINGTON, AND
NATIONAL CREDIT UNION ADMINISTRATION BOARD                      DEFENDANTS


ORDER

This suit for overtime wages under the Fair Labor Standards Act is before the Court on

two motions for summary judgment.  First, Defendant Ike Rookmaker filed a motion for

summary judgment [109] pursuant to Federal Rule of Civil Procedure 56.  Plaintiffs responded in

opposition [117], and Rookmaker filed a rebuttal [123].  Then, Plaintiffs filed an amended

response [125] and an opposition to the rebuttal [127], which prompted Rookmaker to file a

motion to strike [129].  Plaintiffs oppose [130] the motion to strike.  Second, Defendants Dana

Richardson, Wayne Ellis, Guy Hogan, Sonya Teasley, George Phillips, and James Washington

also filed a motion for summary judgment [110].  Plaintiffs responded [119], and Defendants

filed a rebuttal [122].  Plaintiffs then repeated their practice of filing an amended response [124]

and an opposition to the rebuttal [126].

Having fully considered the premises, the Court finds that Defendants' summary-

judgment motions should be granted.  The Court further finds that while the rules do not provide

for Plaintiffs to file a surreply without first seeking leave of Court, the surreply does not alter the

Court's conclusion.  Therefore, the motion to strike is denied.

I.      Facts and Procedural History

        Plaintiffs Jovita Branum, Stephanie Mills, Lindsey Poole, Sheila Raines, and Brenda

Sones are former employees of Valued Member Credit Union (VMCU).  Defendants Ike

Rookmaker, Wayne Ellis, Guy Hogan, Sonya Teasley, George Phillips, and James Washington

served on the Board of Directors of the credit union.  And Defendant Dana Richardson served as

the CEO.  On December 14, 2010, Plaintiffs filed their Complaint against VMCU and the

individual Defendants asserting federal claims for overtime compensation under the Fair Labor

Standards Act (FLSA) and state-law claims for slander and intentional infliction of emotional

distress.

        Shortly thereafter, VMCU apparently became insolvent and on May 31, 2011, the

National Credit Union Administration Board (NCUA) initiated involuntary liquidation

proceedings against VMCU and appointed itself as liquidating agent under 12 U.S.C. § 1787(a).

The case has significantly narrowed since inception because Plaintiffs have abandoned all claims

except for their claims for overtime wages [136].  This claim is now before the Court on the

individual Defendants' motion for summary judgment.  There are currently no pending motions

filed by Defendant NCUA.

        The Court, having considered the submissions of the parties, along with the pertinent

authorities, finds that the individual Defendants are not employers under the FLSA and are

entitled to summary judgment in their favor.

II.     Summary Judgment Standard

        Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil

Procedure when evidence reveals no genuine dispute regarding any material fact and that the

moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III.    Analysis

The individual Defendants argue that Plaintiffs are not entitled to overtime pay from them because: 1) the individual Defendants are not employers under the FLSA and, 2) Plaintiffs are

exempt from the FLSA based on their job duties.  Because Defendants are correct as to the first argument, the Court declines comment on the second.

Generally, for a corporate officer to be considered an employer, he or she must have operating control over employees.  But the facts of this case are complicated by Plaintiffs' claim that the roles of the Defendant board members and the responsibilities of the management team of the credit union changed between 2007 and 2010, when the credit union was audited.  Specifically, Plaintiffs maintain that rather than hire additional employees, the board required existing employees to work overtime.  With this background in mind, the Court turns to the first issue—whether the individual defendants are employers under the FLSA, thereby exposing them to personal liability for unpaid overtime.

A.      Employer Status

The FLSA requires an employer to pay its employees overtime for hours worked over forty hours per week, and an "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. §203(d); *see also Gray v. Powers*, 673 F.3d 352, 354–55 (5th Cir. 2012).  Generally, an individual with managerial responsibilities is considered an "employer" and is liable under the FLSA.  *See Lee v. Coahoma Cnty., Miss.*, 937 F.2d 220, 226 (5th Cir. 1991) (noting that the term "employer" includes individuals with managerial responsibilities and substantial control over the terms and conditions of the employee's work).

A shareholder, member, or officer of an entity is not individually liable as an employer simply because of his or her position.  Instead, the Fifth Circuit Court of Appeals applies an "economic reality" test to determine whether an individual is sufficiently involved in the day-to-

4

day operation of the company and its employees to be considered an employer for FLSA purposes.  *See Gray*, 673 F.3d at 354–55.  "To determine whether an individual or entity is an employer, the court considers whether the alleged employer:  (1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records. " *Id.* at 355 (internal quotations omitted); *see also Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990).

Importantly, when a plaintiff alleges that there is more than one employer—as is the case here—the Court "'must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test.'"  *Id.* (quoting *Watson*, 909 F.2d at 1556)). And much like piercing the corporate veil, the Fifth Circuit has recognized that "'individuals are ordinarily shielded from personal liability when they do business in a corporate form, and . . . it should not lightly be inferred that Congress intended to disregard this shield in the context of the FLSA.'"  *Id.* at 356 (quoting *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 677 (1st Cir. 1998)).   In short, only those individuals "who have operating control over employees" may be individually liable for FLSA violations committed by the company.  *Id.* at 357.

Here, Defendants contend that Plaintiffs have not produced evidence that each named Defendant meets the "economic reality" test, and the Court agrees.  In response to the motions, Plaintiffs claim that a question of fact exists and cite to their own depositions and two affidavits.[1]

---

[1]Plaintiffs reference audio recordings of the board meetings, but those recordings, or a transcript of the recordings, were never submitted as evidence.

Unfortunately, Plaintiffs do not address the four factors of the "economic reality" test, leaving the Court to figure out how their record citations may, or may not, satisfy the test.

On the whole, Plaintiffs' evidence shows that the board members acted collectively, not individually.  *See Gray*, 673 F.3d at 355 (noting that an owner's "participation in a joint decision with co-owners [of the company] proves nothing about whether [that owner] had the authority individually to control employment terms of lower-level employees").  And while they had periodic involvement in financial matters, such as loan decisions, participation in personnel matters such as hiring, firing, management of work schedules, control of rate and method of payment, and maintenance of employee records is lacking.  Reviewing the evidence in the light most favorable to Plaintiffs, their submissions fall short of showing that Defendants exercised operating control over employees.

      1.      Whether Board Members were "Employers"

Plaintiffs rely on evidence provided by Sones, Branum, Mills, Raines, and Poole along with an affidavit from Eugene Steele.  For the most part, the evidence addresses the individual Defendants collectively.  Therefore, this Order addresses Plaintiffs' evidence, organized by the witness who produced it.

      a.      Evidence from Plaintiff Brenda Sones

Plaintiffs first point to the affidavit of Brenda Sones, who served as CEO of the credit union until July 2010.  Sones states, "The Board of Directors at all relevant times had the power to hire and fire and to determine our pay; they possessed control over the Credit Union."  Sones Aff. [120-1] at 1.  Handwritten next to this statement are the names of the board members sued in this action—Wayne Ellis, Ike Rookmaker, Guy Hogan, Sonya Teasley, George Phillips, and

James Washington.  *Id.*  This evidence offers little, as it is merely a conclusory statement that fails to fully address the Fifth Circuit's four-part test and further fails to apply that test to the individual Defendants.  *Gray*, 673 F.3d at 355; *see Little*, 37 F.3d at 1075; *see also Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, No. 11 Civ. 6658, 2012 WL 3886555, at *12 (S.D.N.Y. Sept. 6, 2012) (dismissing individual defendants because allegations in complaint were "nothing more than conclusory allegations designed to satisfy the economic reality test").

### b.   Evidence from Plaintiff Jovita Branum

Next, Plaintiffs rely on excerpts of the deposition of Jovita Branum, who served as the Jackson branch manager.  Pls.' Mem. [120] at 3 (citing Branum Dep. at 21, 71–72, 93, 177, and 181); *Id.* at 4 (citing Branum Dep. at 21, 23, and 49).[2]  Branum's testimony refers only to "the board" collectively; it does not contain specific facts relative to the "economic reality" factors set forth in *Gray* and does not address the Defendants individually.  673 F.3d at 355.

For example, Branum states that "the board had taken away [Sones's] . . . rights as to any decision making, any hiring, firing."  Branum Dep. at 21.  She was able to list the individual members of the board who attended the board meeting, but did not name a specific individual as being responsible for the change in Sones's duties.  *Id.* at 72, 177.  Nor does she testify that any particular board member took over those duties.   Likewise, she testified that "the board" told her and other employees that they would need to work overtime, but she could not say who actually made the statement.  *Id.* at 71–73.

---

[2]Plaintiffs cited the same deposition testimony and affidavits in response to Rookmaker's separate motion.

The closest Branum comes to providing testimony regarding individual board members is the following exchange:

> Q.    And what I'm trying to figure out is who was it that came to you, if anybody, that said you have to work overtime?
> A.    You know what I can tell you?
> Q.    What's that?
> A.    That John Sherman, Wayne Ellis, Guy Hogan many times would say "Oh, I know it's tough. I'm so sorry y'all have to put all these hours in." Why would they tell me that if they didn't expect me to do it.

Branum Dep. at 76 (cited in Pls.' Surreply [126] at 2). But this remark does not lead to the conclusion that Defendants Ellis and Hogan "supervised or controlled employee work schedules or conditions of employment." *See Gray*, 673 F.3d at 356 (finding a comment to an employee that he was doing a "great job" did not constitute supervision).

Branum's testimony does suggest that board members played a role in making loans over a certain dollar amount to members, but lacks specificity as to which board members Branum references. *See* Branum Dep. at 23 (stating that "the board" created, approved, and signed the credit union's loan policy); *id.* at 181 (explaining that the "credit committee" would come to the credit union after hours to approve loans and sign documents).[3] And even if one or more board members visited the credit union to approve loans or handle other financial matters, such activities are not evidence of an individual's involvement in *personnel* matters, such as hiring and firing, control of work schedules, or payment of salaries. *See Gray*, 673 F.3d at 357 (noting that evidence that an owner "occasionally signed checks for the lounge and that bartenders

---

[3]Branum did testify that George Martin and Larry Ezell, neither of whom are defendants in this action, were members of the credit committee. *Id.* at 24.

casually told him how much money they made in tips during his rare trips to the club do not indicate that [the owner] determined the employees' rate or method of payment").

c.      Evidence from Plaintiff Stephanie Mills

Plaintiffs' reliance on the testimony of Stephanie Mills, a former teller, is similarly misplaced. Pls.' Mem. at 3 (citing Mills Dep. at 39 and 44–45). In fact, Mills testified that no one on the board ever told her directly that she had to work overtime. Mills Dep. at 40. Instead, Brenda Sones relayed the message. *Id.* at 39–40.

While not cited by Plaintiffs, the closest Mills comes to touching on individual involvement is her statement that Defendant Ike Rookmaker would call approximately once a week asking who was there at the credit union. *Id.* at 54–55. She stated that he would keep up with everything that was going on, including information about loans and employees' work schedules. *Id.* at 55–56. But even assuming this testimony could satisfy the second factor—"supervised and controlled employee work schedules or condition of employment"—Plaintiffs have not directed the Court to evidence that any of the other three factors are present. *See Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 253 (5th Cir. 2012) (finding an individual was not an employer where the plaintiff presented evidence pointing to only one of the four factors).

d.      Evidence from Plaintiff Shelia Raines

Plaintiffs then direct the Court to the deposition of Shelia Raines, former manager of the Lena branch. Pls.' Mem. at 4 (citing Raines Dep. at 17, 19, 36–37, and 40; 25–26 and 82). Raines testified that she attended a board meeting where it was discussed that the Jackson branch was shorthanded and Ike Rookmaker suggested that instead of hiring new employees, current

9

employees would be paid for overtime.  Raines Dep. at 36–37; 82.  Raines said that the board

"agreed to it," suggesting a collective decision rather than individual action.  *Id.* at 37; *see Gray*,

673 F.3d at 355 (noting that participation in joint decision does not prove that an owner had

authority individually to manage employees).

    And like Mills, Raines denied that any board member *instructed* her to work overtime.

Raines Dep. at 19.  While Raines testified that she did work overtime believing that she would be

paid, she admitted she was never told to turn over any overtime records, and when she was not

automatically paid for overtime, she just "let it go."  *Id.* at 38–40.  The remainder of Raines'

cited deposition testimony deals with obtaining approval from the board or Plaintiff Brenda

Sones for loans over a certain amount.  *Id.* at 25–26.  None of this testimony suggests that the

"economic reality" factors are satisfied.

e.     Evidence from Plaintiff Lindsey Poole

    Plaintiffs rely on the deposition of Lindsey Poole, a former teller, but her testimony also

falls short.  Pls.' Mem. [120] at 4 (citing Poole Dep. at 39, 55).  Poole testified that "[t]he board

had said they would compensated [sic] us for our hours," but she did not point to any individual

board member.  Poole Dep. at 55; *see Gray*, 673 F.3d at 355.  Furthermore, Poole admitted that a

board member never spoke directly to her about overtime, but the message was actually relayed

by Plaintiff Brenda Sones.  Poole Dep. at 39.  When questioned whether any board members saw

her working overtime, she stated that John Sherman—who is not a defendant—and Wayne Ellis

"would come [to the credit union] . . . to sign documents and also help with the financials of the

credit union."  Poole Dep. at 55.  But again, involvement in the financial aspects of the credit

union does not equate to oversight of personnel matters.

10

f.      Evidence from Eugene Steele

Lastly, Plaintiffs included an affidavit from Eugene Steele, who served on the Supervisory Committee of the credit union from 2002 to 2010.  Steele Aff. [120-6].  Steele states:  "The Board of Directors controlled the Credit Union including the power to hire and fire employees and determine their pay."  *Id.*  As to the overtime issue, he claims, "Beginning in 2007, the Board and Supervisory Committee required the staff to work as much as needed, knowing that it would take over 40 hours per week, to finish a backlog of reports."  *Id.*  Like Sones's affidavit, these statements are conclusory and do not provide specific facts as to any individual Defendant's involvement in the day-to-day management of personnel.

In short, Plaintiffs repeatedly testified in their depositions about what "the board" did, or their understanding of "the board's" wishes, particularly in regard to overtime.  But Plaintiffs have not directed the Court's attention to specific facts suggesting the individual board members meet the Fifth Circuit's "economic reality" test.  Actions the board members took collectively do not expose them to individual liability for FLSA overtime wages.  *See Gray*, 673 F.3d at 355 (noting that an owner's "participation in a joint decision with co-owners [of the company] proves nothing about whether [that owner] had the authority individually to control employment terms of lower-level employees").  And testimony that board members participated in loan management or tended to the financial business of the credit union does not evidence operating control over employees.

2.      Whether Defendant Dana Richardson was an "Employer"

Defendants have also moved for summary judgment as to Defendant Dana Richardson, who stepped in as CEO of the credit union in October 2010, following Brenda Sones's departure.

11

As with the other Defendants, Richardson maintains that she was not an employer.  In Response to the motion, Plaintiffs assert that Richardson "exercised authority over loans and the power to hire and mostly fire the staff of the Credit Union . . . and had the ability to pay the plaintiffs their overtime, and she refused."  Pls.' Resp. [120] at 5 (citing Branum Dep. at 40–41).

It is undisputed that Plaintiffs Sones, Poole, and Mills had all left the credit union at this point, so the Court focuses on Branum and Raines.  Plaintiff Branum worked under Richardson for two days.  Branum Dep. at 41.  And Plaintiff Raines left the credit union on November 3, so she worked under Richardson for a few weeks.  Raines Dep. at 8–9.  Both testified that Richardson terminated their employment.  Looking to the economic reality factors, the only factor implicated is the "power to hire and fire" employees.  *Gray*, 673 F.3d at 355.  Even assuming this factor is satisfied, Plaintiffs have not directed the Court to any testimony or evidence suggesting the remaining three factors are met.  *See Martin*, 688 F.3d at 253 (finding that proof of only one factor is not sufficient).

As for Plaintiffs' assertion that Richardson had the ability to pay Plaintiffs overtime, they have not cited any evidence in support.  Defendants submitted a letter from Richardson to Branum, in which she states: "*The Board of Directors* has directed me to offer you an amount of $1500.00 for wages that you have stated were not paid."  Richardson Letter [110-7] (emphasis added).  Contrary to Plaintiffs' argument, this evidence does not suggest that Richardson had authority to pay Branum, absent direction from the board.

In the end, the Court must determine whether each of the individual Defendants should be considered an employer, utilizing the four factors set out in *Gray*, 673 F.3d at 355.[4]  Plaintiffs

---

[4]It does not appear that NCUA disputes that it qualifies as Plaintiffs' employer.

12

presented no evidence to satisfy any of the four factors with respect to Defendants Ellis, Hogan,

Teasley, Phillips, and Washington.  *Id.* at 357 ("[F]inding employer status when none of the

factors is present would make the test meaningless.").  Plaintiffs presented some evidence that

Rookmaker supervised employee work schedules and Richardson had the power to fire

employees, but satisfaction of only one of the four factors does not support a finding that an

individual is an employer.  *See Martin*, 688 F.3d at 253; *Dupre v. Westlawn Cemeteries*, 2013

WL 3730125, at *3 (E.D. La. July 12, 2013) (granting motion to dismiss individual where only

one of the four factors was met).   Reviewing the evidence cited by Plaintiffs in the light most

favorable to them, the factors have not been met.  Defendants' motions for summary judgment

should be granted; dismissal of the individual Defendants is appropriate.[5]

> B.     Other Grounds

Defendants alternatively contend that certain employees—Brenda Sones, Jovita Branum,

and Sheila Raines—are exempt from the overtime provisions of the FLSA due to their positions

and job responsibilities.  Because the Court concludes that the movants are not employers under

the FLSA, the Court need not reach this alternative argument.

---

[5]Although the Court has read the entire record, the parties attached portions of depositions that were not directly cited.  To the extent the Court may have overlooked evidence not referenced in the memoranda, it must be noted that the Court is under no "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Jackson v. Cal-Western Packaging Corp.*, 601 F.3d 374, 379–80 (5th Cir. 2010) (citation omitted); *see also Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").  The 2010 amendments to Rule 56 now make this clear.  Pursuant to Rule 56(c)(1), a party asserting that a fact "is genuinely disputed must support the assertion by: (A) citing to *particular parts* of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." (emphasis added).

Defendant Ike Rookmaker also argues that Plaintiffs' claims are time-barred because they were not filed within sixty days of the issuance of the NCUA's February 17, 2012 notice.   But Rookmaker mistakenly relies on the date that Judge Ball severed the action against NCUA from the present action—July 20, 2012—rather than the date this action was filed—December 14, 2010.   Referencing the NCUA determination, Rookmaker also suggests that Plaintiffs' claims are barred by res judicata and/or collateral estoppel.   But he appears to have abandoned these arguments in his rebuttal. In any event, neither argument is well-taken.

IV.     Conclusion

Based on the foregoing, the Court finds that Defendants' motions for summary judgment [109, 110] should be granted.   Defendants Dana Richardson, Ike Rookmaker, Wayne Ellis, Guy Hogan, Sonya Teasley, George Phillips, and James Washington are dismissed from this action.[6]

The only remaining claims are Plaintiffs' claims against NCUA for overtime wages under the FLSA.   That action was severed, then re-consolidated with the present action.   Because prior discovery in the NCUA case was limited to the administrative record, the remaining parties are directed to contact Magistrate Judge Ball with fourteen (14) days of this Order to set up a telephonic conference to determine (1) if Plaintiffs wish to proceed, (2) if additional discovery is necessary, and (3) what deadlines should be set.

**SO ORDERED AND ADJUDGED** this the 27th day of February, 2014.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[6]Plaintiff Jovita Branum's motion in limine [131] is considered moot, because it sought to prevent only to the individual Defendants from introducing certain evidence.